LINK:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-7023-GAF | Date | December 27, 2006 |
|---|---|---|---|
| Title | United States EEOC v. Universal Pictures, et al. | | |

Present: The Honorable **GARY ALLEN FEESS**

| Marilynn Morris | None | None |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

None Present  None Present

**Proceedings:** (In Chambers)

## ORDER RE: DEFENDANTS' MOTIONS IN LIMINE

Intervenor Frank Davis, who is African-American, was selected by Director John Singleton, also African-American, to work as First Assistant Director (FAD) on "2 Fast 2 Furious" (FF2), a big budget action picture produced by Defendant Universal. In the midst of shooting the film, Universal fired Davis and hired a new FAD. Plaintiff EEOC and Intervenor Frank Davis (who for convenience are jointly referenced as "Plaintiffs" in this order) contend that Davis was terminated from his position as FAD because he is African-American. Defendants contend that he was terminated because he performed his duties poorly.

The parties have filed numerous motions in limine regarding evidentiary disputes connected with the anticipated trial of the lawsuit. The Court issued its ruling on Plaintiff's motions on November 17, 2006. In connection with that ruling, the Court decided Defendant's Motion in Limine No. 8, which addressed the same issues raised in Plaintiff's Motion in Limine No. 3. The following sets forth the Court's ruling on Defendant's Motions in Limine Nos. 1, 2, 3, 4, 5, 6, 7 and 9.

**MOTION IN LIMINE NO. 1:** To Exclude Testimony By Plaintiff's Damages Expert

The motion is **GRANTED**, but without prejudice to reconsideration after the presentation of all factual evidence pertaining to Davis's termination. Plaintiffs should be advised, however, that it appears unlikely that, given Fractor's report and the testimony of Bennett, a foundation can be laid to permit him to opine on Davis's future damages.

DOCKETED ON CM
DEC 28 2006
BY ___ 145

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-7023-GAF | Date | December 27, 2006 |
|---|---|---|---|
| Title | United States EEOC v. Universal Pictures, et al. | | |

## Discussion

Plaintiffs retained David Fractor, an economist, to testify regarding the losses Mr. Davis sustained as a result of his termination as FAD on FF2. According to Defendants, Fractor relied on two assumptions in reaching his conclusions: (1) that, because he was terminated from FF2, Davis would not be able to get work as a FAD; and (2) that, if Davis had not been fired, he would have moved to a higher level comparable to FAD Bruce Franklin and would have been compensated at Mr. Franklin's level. (Gray Decl., Exh. A, ¶¶ 13, 14.) These assumptions were provided to Fractor by EEOC counsel. (Id., Exh. B, at 21:10 – 22:10.)

Defendants seek to exclude Fractor's opinions because nothing in Ms. Bennett's Rule 26 disclosure, her supplemental report or her deposition testimony supports these assumptions. Indeed, when Ms. Bennett was asked to opine on Davis's future had he not been terminated, she testified as follows:

> My response was that it's very hard in this industry to know that because we are all freelance, and even good people sometimes don't work for periods of time, so that it was a difficult question. On the one hand, the saying in the industry is you're as good as your last job and work generates work. And there's a lot of truth to that. On the other hand, you can't say absolutely that he would have gotten work. You can speculate that he probably would have, but you can't say it absolutely. That was my response.

(Id., at Exh. D, at 108:22 – 109:8.) Further, when asked whether she had any information regarding whether Davis's termination had prevented him from thereafter being hired as an FAD, Ms. Bennett said, "No. I mean, it would be speculation. I have no way of knowing what's said around town about him. I have no way of knowing that." (Id., Exh. D, at 109:16-18.) Likewise, she offered no opinion regarding whether he would have been viewed comparably to Bruce Franklin because, according to her testimony, "I'm not familiar with Franklin's career, so I don't – there's no way I can make an opinion about that." (Id., at 112:3-5.)

In response, Plaintiffs present two principal arguments.

First, Plaintiffs contend that the issue presented need not be decided because it relates to "front pay," which is a matter that will be decided by the Court and not the jury. For the reasons stated by this Court in ruling on Plaintiffs' Motion in Limine No. 5, the damages Davis seeks are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 03-7023-GAF | Date | December 27, 2006 |
|---|---|---|---|
| Title | United States EEOC v. Universal Pictures, et al. | | |

consequential damages for loss of professional standing and reputation, Williams v. Pharmacia, 137 F. 3d 944, 952-53 (7th Cir. 1998), and must be determined by a jury. Thus, the Court must decide the issue presented in Defendants' motion.

Second, Plaintiffs contend that the Court must hear all of the evidence before it can decide whether a sufficient foundation has been laid for Fractor's testimony regarding his calculations of Davis's "front pay." They argue that they intend to have Fractor testify: (1) to his mathematical methods for determining the damages figure; and (2) to the calculation of post-termination economic losses with and without mitigation. They further argue that they should then be permitted to present Fractor's actual calculations of Davis's alleged losses. They contend that they should be permitted to do so because a sufficient factual basis has been established in the discovery materials to permit such testimony, and because Defendants have ignored an additional fact on which Fractor relies – that Davis's protest and lawsuit, in addition to his termination, have contributed to his losses.

Plaintiffs arguments contain two basic flaws. First, the argument concerning methodology is a straw man because Defendants have not challenged any aspect of Fractor's mathematical methodology in their motion. Rather, Defendants contend that Fractor's computations are based on faulty assumptions, which brings the Court to the second, and more important flaw. Plaintiffs fail to address the fundamental problem identified by the Defendants – that the assumptions on which Fractor based his conclusion that Davis suffered losses are not supported by anything in the evidentiary record, and that there is no basis for comparing Davis's compensation to Franklin's. Fractor himself testified that he frequently makes his calculations based on assumptions that are based on another expert's testimony. (Rochester Decl., Exh. B, at 70:25 – 73:20.) As he stated, "if the industry expert is doing what they're doing, they are the ones who are basically providing the relevant information as to what kind of career this person could or could not have had." (Id.) And without a proper basis, even Fractor conceded that his computations would have to be modified. (Id., at 88:9-21.) For these and numerous other reasons set forth in Defendants' motion and reply, the Court concludes that Plaintiffs cannot establish a foundation for Fractor's computation of Davis's actual damages.

**MOTION IN LIMINE NO. 2:** To Exclude Reference to Plaintiffs' "Blackball Theory"

The motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs are precluded from arguing that Defendants "blackballed" him in the industry, but may argue that he has failed to obtain employment and has therefore suffered damages as a result of his wrongful/discriminatory termination by the Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-7023-GAF | Date | December 27, 2006 |
| Title | United States EEOC v. Universal Pictures, et al. | | |

**Discussion**

Defendants move to preclude Plaintiffs from arguing that Davis has been "blackballed" from jobs in the film industry because no evidence has been presented "that someone from Universal called directors and told them not to hire Mr. Davis." (Motion, at 1.) Defendants note that no admissible evidence has been presented to support that theory, and, according to Defendants, Plaintiffs conceded in their meet and confer that they have no such evidence, but believe that the jury should be permitted to draw the inference that Universal "must have done something to prevent directors from hiring him." (Id.) Among other things, Defendants cite to the testimony of several African-American directors who, before the FF2 project, hired and then fired Mr. Davis essentially for incompetence. (Motion, at 7-9.) Thus, according to Defendants, Mr. Davis had a poor reputation before he was hired on FF2, and that his subsequent failure to obtain employment (if true) reflects his capabilities and not any effort by Universal to "blackball" him.

Plaintiffs contend that they intend only to assert that Davis's unemployment stems from his termination (which they contend was wrongful) and from his decision to file suit challenging his dismissal. (Oppos., at 1.) Evidence supporting that theory includes Davis's work history before FF2 and his four years of unemployment since then.

Since Plaintiff does not oppose the motion, it will be granted. However, the Court notes that Defendant may argue that, as a result of his improper termination, he became unable to obtain work and therefore suffered damages.

**MOTION IN LIMINE NO. 3**: To Exclude Testimony By Matthew Weiner Regarding a "Stray Remark" of Terry Miller

The motion is **DENIED**.

**Discussion**

While Davis was still FAD, he sought to replace the Second Assistant Director, Jason Roberts, with Matthew Weiner. Davis put Weiner in touch with Terry Miller, the unit production manager on FF2. In a telephonic interview, Miller allegedly inquired of Weiner's race, asking "what color are you, are you black?" Defendants seek to preclude evidence of this statement because it was nothing more than a "stray remark," DeHorney v. Bank of America, 879 F.2d 459, 467 (9th Cir. 1989), and because it was not made by the executive who made the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-7023-GAF | Date | December 27, 2006 |
|---|---|---|---|
| Title | United States EEOC v. Universal Pictures, et al. | | |

decision to terminate Davis. Plaintiffs oppose the motion.

Defendants' argument is unpersuasive. First, the remark in question was not a "stray remark" made in the day-to-day operations of the workplace. Rather, it was a question directed to an applicant for a position on the FF2 project. Second, the remark was directed to a person who was referred by Davis, an African-American, suggesting an unreasonable (and therefore biased) belief that Davis would only seek to hire other African-Americans. Third, the remark was made by a member of the management team on the FF2 project, which could support an inference of bias not just on the part of one person but rather on the part of the team. Finally, the evidence suggests that Miller, the person who made the remark, was vocal in his criticism of Davis in contemporaneous documents directed to other managers, and he conceded in his deposition that he was involved in the decision to replace Davis. (Miller Depos., 43:21-24.) For all of these reasons, Plaintiffs may present evidence of the statement.

**MOTION IN LIMINE NO. 4:** To Exclude Certain Opinions By Plaintiffs' Expert Yudi Bennett

The motion is **GRANTED IN PART** and **DENIED IN PART.** The witness may testify generally to the role, duties and responsibilities of a FAD, to the usual manner in which the FAD is hired, and, in a general way, to the process of termination. On these subjects she has adequate background, knowledge and information to assist the jury. However, the witness may not testify to any opinion regarding the circumstances or propriety of Davis's termination. The record clearly indicates that she has no foundation from which to offer such an opinion.

**Discussion**

Plaintiffs designated Yudi Bennett as an expert in industry practices relating to First Assistant Directors. Her designation included a description of her anticipated testimony, which included a statement that she would testify "to a limited degree, [to] certain aspects regarding the hiring and termination of 1st ADs." Bennett's expert report concludes that the hiring of an FAD is, in the first instance, the exclusive province of the Director (which is not contested) and that the termination of an FAD may be the result of a number of factors or for a number of reasons. Examples are provided.

Plaintiffs oppose the motion contending that Ms. Bennett's opinions meet the requirements of Rule 702, which provides in pertinent part that where a witness with:

Case 2:03-cv-07023-GAF-JTL Document 255 Filed 12/27/06 Page 6 of 10 Page ID #:214

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-7023-GAF | Date | December 27, 2006 |
|---|---|---|---|
| Title | United States EEOC v. Universal Pictures, et al. | | |

specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Here Plaintiffs contend that the witness has specialized knowledge, is qualified by reason of knowledge and experience, and therefore has sufficient facts and data upon which to discuss the hiring, firing and role of a FAD in the production of a movie for theatrical release. The Court agrees. The resume and report of the witness establishes an extensive background and knowledge regarding all aspects of the hiring, firing and the duties and responsibilities of a FAD. It is not necessary, given her many years as a FAD, that she be fired or have participated personally in the firing of a FAD to provide information on that subject. However, she concedes that she had no role in the termination at issue in this case and that she has read only a single deposition relating to that subject. Thus, while she can provide general testimony, which will assist the jury in understanding the evidence and issues in this case, she may not opine on the specific circumstances or the propriety of Davis's termination.

**MOTION IN LIMINE NO. 5**: To Exclude Evidence Concerning Whether Universal Complied With the Collective Bargaining Agreement With the Directors' Guild of America

The motion is **GRANTED.** The Court will not permit either side to present evidence regarding the collective bargaining agreement and proceedings before the Director's Guild of America.

### Discussion

Because Davis is a member of the Director's Guild of America, his terms and conditions of employment are the subject of a collective bargaining agreement. Under that agreement, Davis could properly be terminated "for cause" (as defined in the agreement) or with the consent of Singleton. When Universal gave Davis notice of his termination, Davis complained to the Guild, whose role is to enforce and protect the rights of its members under the agreement. Apparently, the DGA ultimately concluded that no grievance should be pursued because Singleton consented to the termination and because Universal otherwise complied with the terms and conditions of the agreement.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   CV 03-7023-GAF                                      Date   December 27, 2006

Title   United States EEOC v. Universal Pictures, et al.

When the EEOC filed this case, the complaint included claims for breach of contract, unfair competition and fraud. On motion by Defendants, the Court concluded that a resolution of those claims would require an interpretation of the collective bargaining agreement and therefore that those claims were preempted under the Labor Management Relations Act, Section 301. 29 U.S.C. § 185(a); see Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993 (9th Cir. 1987).

From a review of the moving and opposition papers, it is not clear whether Plaintiffs seek to present evidence regarding the collective bargaining agreement and DGA proceedings because they believe that Defendants intend to present evidence on that topic, or whether they seek to do so regardless of the Defendants' intentions. In their opposition, Plaintiffs cryptically assert:

> Plaintiffs do not intend to introduce this evidence [alleged failure to comply with the Basic Agreement termination process] to show that Universal did not have "cause." The reason for Davis' termination is the ultimate issue in this case. Whether Universal was in compliance with the process for termination does not decide that issue. It does however present strong evidence that the real motive to terminate Davis was not his performance.

(Emphasis added.) Thus, even Plaintiffs concede that the proffered evidence has limited probative value.

Even if the Court were to conclude that compliance with the collective bargaining agreement was relevant to an issue in this case, a proposition that the Court considers dubious both as a matter of fact and law, the probative value of the evidence is slight and is outweighed by the substantial risk of confusion and the consumption of undue time at trial. Whether Universal had legitimate, non-discriminatory reasons for terminating Davis turns not on the institution of procedures before the Director's Guild but on what occurred in the workplace. If Plaintiffs are permitted to put compliance with Director's Guild procedures in issue, then Defendants will no doubt seek to present evidence that they did comply and that the Guild chose not to pursue the grievance. (See, e.g., Rochester Decl., Exhs. A & B.) In short, there is a significant risk that the parties will become embroiled in a mini-trial on the Guild proceedings, thus consuming trial time and diverting the jury from the core issues in this case. For these reasons, the entire subject of the collective bargaining agreement is excluded from evidence in this trial.

LINK:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 03-7023-GAF | Date | December 27, 2006 |
| Title | United States EEOC v. Universal Pictures, et al. | | |

**MOTION IN LIMINE NO. 6**: To Exclude Certain Hearsay Testimony By Rodney Mitchell

The motion is **GRANTED**.

### Discussion

Singleton allegedly told Mitchell, an official with the Director's Guild of American (DGA), that he (Singleton) believed that Davis's termination was motivated by race. As set forth below in its ruling on the Motion in Limine No. 9, Singleton's opinion on that subject, on the record before this Court, is inadmissible even if he were to testify to it himself. Mitchell's testimony that Singleton made such a statement therefore would not be admissible as a prior inconsistent statement since the entire subject of Singleton's opinion will not be the subject of trial testimony. Similarly, the Court need not consider Rule 807, Fed. R. Evid., the residual hearsay exception, since the Court has concluded that Singleton's testimony on the subject is not admissible.

**MOTION IN LIMINE NO. 7**: To Exclude Argument That Universal Never Wanted To Hire Mr. Davis Due to His Race

The motion is **DENIED**.

### Discussion

When Singleton was retained as the director on FF2, he exercised his right to choose his FAD by selecting Frank Davis for the job. Universal's production manager, Andrew Fenady, and other Universal executives expressed concern over Davis's qualifications purportedly because he lacked experience on a film as large and complex as FF2. Plaintiffs apparently intend to argue that Universal's concern was based on Davis's race and that it never wanted to hire Davis because he was African-American. Because Fenady and the other executives were reportedly unaware of Davis's race when he was hired, Universal now seeks to preclude Plaintiffs from arguing that Fenady's assessment of Davis was racially motivated.

The Court concludes that evidence regarding Universal's concerns at the time that Davis was hired to be relevant to a resolution of this case. Moreover, the great weight of such evidence would tend to support Universal's claim that its later decision was not racially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   CV 03-7023-GAF                                    Date   December 27, 2006

Title      United States EEOC v. Universal Pictures, et al.

motivated but rather was based on non-racially based concerns that its decision-makers had expressed even before he commenced work on the project. But having determined that such evidence is admissible, the Court cannot preclude Plaintiffs – without in effect summarily adjudicating the issue – from arguing a different inference. And plainly, the Court could not summarily adjudicate a question where, as here, the ultimate determination turns on credibility.

Here Plaintiffs present evidence that at least one Universal executive had seen Davis's name on a list of African-American FADs and contend that they should be able to argue from that, and on the basis of later events, that, from the outset, racial bias motivated Universal's concern over Davis's hiring as FAD. While the Court does not find the argument particularly persuasive, especially given Universal's determination to retain an African-American director for the film, Davis may present the theory at trial for the jury's consideration.

**MOTION IN LIMINE NO. 9:**   To Exclude Certain Speculative Testimony by John Singleton

The motion is **GRANTED.**

### Discussion

In deposition, John Singleton was questioned regarding his observations concerning the job performance of Frank Davis and his conversations with Universal executives who were involved in Davis's termination. Singleton acknowledged that he was not given a reason for Universal's termination of Davis, but testified to his beliefs on that subject. Among other things, Mr. Singleton stated that he believed some of the Universal executives were intimidated by Davis as a black man "in an authoritative position," that there was a clash of personalities, and that the personality clash had a racial component. Defendants move to exclude this evidence as speculation, improper opinion and without foundation. Plaintiffs oppose the motion. They tacitly acknowledge that Singleton is expressing an opinion, but assert that statements by Universal executives Mayes and Fottrell that Davis denied them access to Singleton and that Davis acted like a "bodyguard" provides a foundation for Singleton's opinion.

Rule 602, Fed. R. Evid., provides in pertinent part:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.

LINK:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-7023-GAF | Date | December 27, 2006 |
|---|---|---|---|
| Title | United States EEOC v. Universal Pictures, et al. | | |

Here Singleton does not pretend to have any evidence of why the executives wanted to fire Davis, just his belief as to what motivated the decision. Such speculation runs afoul of Rule 602.

Plaintiff argues that Rule 701 trumps Rule 602 in these circumstances. The Court disagrees. Rule 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, ***and*** (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

(Emphasis added.) Even if the Court concluded that element (a) of the rule was satisfied, the testimony under discussion does not satisfy element (b). Singleton's beliefs are not essential to an understanding of his observations and the motivation of the Universal executives is not the sort of question where the witness's opinion is essential to an understanding of a fact in issue. A jury is well equipped to assess the behavior and motivations of the parties to this dispute.

Finally, even if the Court were to conclude that an adequate foundation had been laid, that the requirements of Rules 602 and 701 had been satisfied, and that the evidence is relevant to the claims before the Court, the Court would not admit it under Rule 403. Singleton's speculation regarding the motives of others, which lacks any foundation beyond his disagreement with Defendants' decision, has very little probative value. On the other hand, such speculation from the director of the picture possesses great potential for prejudice. The motivation of the decision-makers will necessarily be decided inferentially based on all of the evidence in the record. The jury should be guided by the evidence and not on the opinions of authority figures on either side of this case.

Accordingly, Singleton can testify to all statements made by Universal Executives regarding Davis's termination, including statements regarding Davis's purporting to act like a "bodyguard," and to his observations of Davis's job performance. Accordingly, the Court will preclude only Singleton's speculations and opinions regarding the motivation of Mayes and Fottrell.

IT IS SO ORDERED.